Eric J. Gitig (SBN 307547)
Eric.Gitig@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Kevin Ha (State Bar No. 322252)
Kevin.Ha@jacksonlewis.com
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone:  (415) 394-9400
Facsimile:  (415) 394-9401

Attorneys for Defendant
PHARMACA INTEGRATIVE
PHARMACY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRIS GUERRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHARMACA INTEGRATIVE PHARMACY, INC.; and Does 1 through 20, inclusive,<br><br>Defendant. | Case No.<br><br>**DEFENDANT PHARMACA INTEGRATIVE PHARMACY, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332(d) AND 1441 [CAFA JURISDICTION]**<br><br>Complaint Filed: April 15, 2022 |

1

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                             Case No. TBA

TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND PLAINTIFF KRIS GUERRA:

PLEASE TAKE NOTICE that Defendant PHARMACA INTEGRATIVE PHARMACY, INC. ("Defendant") hereby invokes this Court's jurisdiction under 28 U.S.C. § 1332(d) and remove, pursuant to 28 U.S.C. §1441, the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Santa Clara ("Superior Court"). While Defendant adamantly disputes that Plaintiff KRIS GUERRA ("Plaintiff") or any of the individuals whom he seeks to represent in this action are entitled to any recovery, Plaintiff's allegations in the Complaint show that he has placed in controversy a case that is within the jurisdiction of this Court. Defendant submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff against Defendant and without conceding that Plaintiff has pled any claims upon which relief can be grated. This removal is based on the following grounds:

## PROCEDURAL BACKGROUND

1. On April 15, 2022, Plaintiff filed a civil action against Defendant in Santa Clara Superior Court, Case No. 22CV396906. In his Complaint, Plaintiff asserts the following nine causes of action on behalf of himself and a class of individuals he seeks to represent: (1) Failure to Pay Minimum Wages (Exh. A to Notice of Removal (Complaint) ("Compl."), ¶¶ 20-25); (2) Failure to Pay Overtime Wages (*Id*., ¶¶ 26-32); (3) Failure to Provide Meal Periods (*Id*., ¶¶ 33-41); (4) Failure to Provide Rest Periods (*Id*., ¶¶ 42-48); (5) Failure to Provide Accurate Itemized Wage Statements (*Id*., ¶¶ 49-55); (6) Failure to Reimburse All Business Expenses (*Id*., ¶¶ 56-65); (7) Failure to Timely Pay All Wages Due Upon Termination/Separation of Employment (*Id*., ¶¶ 66-71); and (8) Violations of Business & Professions Code section 17200 *et seq*. (*Id*., ¶¶ 72-78) Plaintiff also asserts a single cause of action on an individual basis for the Failure to Timely Produce all Personnel Records. (*Id*., ¶¶ 79-85.)

2. Defendant was served with the Summons and Complaint and related court documents in this action on May 6, 2022. (Declaration of Eric J. Gitig in Support of Notice of Removal ("Gitig Decl."), ¶ 2.) True and correct copies of the Summons, Complaint and other related court documents are attached as **Exhibit "A"** to the Gitig Declaration.

2

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                    Case No. TBA

3.     On June 1, 2022, prior to the filing of this Notice of Removal, Defendant filed an Answer to the Complaint in the Superior Court of the State of California in and for the County of Santa Clara making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  A true and correct copy of Defendant's Answer is attached as **Exhibit "B"** to the Gitig Declaration.

4.     As of the date of this Notice of Removal, **Exhibits "A"** and **"B"** to the Gitig Declaration constitute all pleadings received or filed by Defendant in this matter.  (*Id.* at ¶ 4.)

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

5.     The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), states in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

6.     In addition, CAFA confers federal court jurisdiction only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  28 U.S.C. § 1332(d)(5).

7.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy—based on the allegations in the Complaint—exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from one of the Defendants. *See* 28 U.S.C. §§ 1332(d) and 1453.  Furthermore, Defendant is not a State, State official, or other governmental entity.

### Plaintiff and Defendant Are Citizens of Different States

8.     CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant; when at least one member of a class is a citizen of a foreign state and one defendant is a U.S. citizen; or when at least one member of a class of plaintiffs is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d)(2).

//

3

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                Case No. TBA

9. A natural person's citizenship is determined by her state of "domicile." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is [her] permanent home, where [she] resides with the intention to remain or to which [she] intends to return." *Id*. (citation omitted).

10. A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id*. A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

11. Diversity of citizenship is determined "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

12. Here, Plaintiff alleges that he "is a citizen of California." (Compl., ¶ 11.)

13. Defendant is a citizen of Delaware because it is incorporated in that state. (O'Donoghue Decl., ¶ 3.) At all relevant times, Defendant's principal place of business has been in Colorado because its corporate headquarters are located there, and the majority of executive and administrative functions are directed, controlled, and coordinated from there. (*Id.*) As such, Defendant is a citizen of the State of Delaware and Colorado. (*Id*.)

14. Based on the above, the minimal diversity requirement of CAFA removal is satisfied since Plaintiff is a citizen of California, whereas at least one Defendant is a citizen of different states, Delaware and Colorado.

//

//

4

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                    Case No. TBA

**The Putative Class Consists of More Than 100 Members**

15. Plaintiff brings this action on behalf of himself and "[a]ll current and former non-exempt employees who worked for Defendants in the State of California for four years and 179 days preceding the filing of [the Complaint, *i.e.*, October 18, 2017] to the date of trial." (Compl., ¶ 16.)

16. Plaintiff alleges that the putative class is estimated to be greater than 100 individuals. (*Id.*, ¶ 19(a).) Further, based on a review of Defendant's records, Defendant employed over 100 non-exempt employees in California during the time period of October 18, 2017[1] to May 23, 2022 (the "Putative Class Period"). (O'Donoghue Decl., ¶ 4.)

17. Therefore, Plaintiff's claims satisfy CAFA's numerosity requirement.

**The Purported Amount in Controversy Exceeds $5,000,000**

18. CAFA authorizes the removal of class actions in which the amount in controversy exceeds $5,000,000. 28 U.S.C. §1332(d).

19. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp. 993, 1001 (C.D. Cal. 2002) (*citing Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim")). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843, n.1 (9th Cir. 2002) (citation omitted).

20. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007).

---

[1] Although Plaintiff alleges that the class period is four years and 179 days from the filing of the Complaint, and Defendant has calculated the amount in controversy for the purposes of the removal based on this allegation, Defendant does not waive its right to dispute the class period for which Plaintiff contends.

5

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                Case No. TBA

Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.*, No. 22-55058, 2022 U.S. App. LEXIS 6932, *1-4 (9th Cir. Mar. 17, 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

21. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014), the United States Supreme Court held that where the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554 (emphasis added); *see Mackall v. HealthSource Global Staffing, Inc.*, 2016 U.S. Dist. LEXIS 11929, at *8 (N.D. Cal. Sept. 2, 2016) ("[T]he burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to 'research, state, and prove the plaintiff's claim for damages.'"). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys' R' US – Delaware, Inc.*, 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart*, 135 S. Ct. at 554. To the

contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183-84 (9th Cir. 2015).

22. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14-CV-03339-LHK, 2014 U.S. Dist. LEXIS 170464, at *12 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

23. As outlined below, a plausible reading of the causes of action alleged in the Complaint conservatively places an amount in controversy exceeding $5,000,000.[2] The amount in controversy exceeds $5,000,000 based on the First Cause of Action for alleged failure to pay minimum wages, the Second Cause of Action for alleged failure to pay overtime wages, the Third Cause of Action for failure to provide meal periods, the Fourth Cause of Action for failure to permit rest breaks, the Fifth Cause of Action for failure to provide accurate itemized wage statements, the

---

[2] Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or the putative class members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other form of relief. Defendant also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096).

Sixth Cause of Action for failure to reimburse business expenses, and the Seventh Cause of Action for alleged failure to pay final wages upon separation of employment, as well as corresponding attorneys' fees. The below estimates of the amount in controversy reach the jurisdictional threshold under CAFA without including the amounts in controversy alleged under Plaintiff's other cause of action for alleged violation of California Business & Professions Code § 17200, *et seq*. This further establishes that this Court has jurisdiction over this putative class action under CAFA.

<u>Failure to Pay Minimum and Overtime Wages</u>

a.     Under the First Cause of Action for alleged failure to pay minimum wages, Plaintiff seeks unpaid wages of at least minimum wage on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the period of four years prior to the filing of the Complaint to final judgment. (Compl*.,* ¶¶ 20-25.)

b.     Plaintiff alleges that, "During the relevant time period, Defendants paid Plaintiff and class members less than minimum wage when, for example, Defendants required Plaintiff and class members to work off-the-clock during meal breaks and during health screenings when Plaintiff and class members were under Defendants' control.  To the extent these hours do not qualify for the payment of overtime and doubletime, Plaintiff and class members were not being paid at least minimum wage for their work." (Compl*.,* ¶ 22.) He also claims that "Defendants regularly failed to pay at least minimum wage to Plaintiff and class members for all hours worked pursuant to Labor Code §§ 1194 and 1197.  (*Id.*, ¶ 23.) Plaintiff also alleges that she is entitled to recover liquidated damages under Labor Code section 1194.2. (*Id.*, ¶ 25.)

c.     Based on a review of Defendant's records, Defendant's non-exempt employees within California worked over 48,725 workweeks during the Putative Class Period, of which approximately 12,240 were worked by full-time employees, 20,335 were worked by part-time employees, and 16,150 were worked by on call or per-diem employees. (O'Donoghue Decl., ¶ 5.) During this period, the minimum wage rate in California was at least $10.50 per hour. *See* California Department of Industrial Relations Schedule of California Minimum Wage rate 2017-2023 (https://www.dir.ca.gov/dlse/faq_minimumwage.htm).

/ / /

1    d.    Therefore, conservatively assuming that (i) each putative class member who worked for Defendant on a full-time basis was not paid at least one hour per week of at least minimum wage, (ii) each putative class member who worked for Defendant on a part-time basis was not paid at least one-half hour per week of at least minimum wage, and (iii) each putative class member who worked for Defendant on an on call or per-diem basis was not paid at least one-quarter hour per week of at least minimum wage (*see Kastler*, *infra*) the amount in controversy from this claim equals at least $555,346, which includes: (i) $128,520 in unpaid minimum wages for full-time employees ($10.50 x one-hour unpaid minimum wage per workweek x 12,240 workweeks) and $128,520 in liquidated damages; (ii) $106,759 in unpaid minimum wages for part-time employees ($10.50 x ½-hour unpaid minimum wage per workweek x 20,335 workweeks) and $106,759 in liquidated damages; and (iii) $42,394 in unpaid minimum wages for on call or per diem employees ($10.50 x ¼-hour unpaid minimum wage per workweek x 16,150 workweeks) and $42,394 in liquidated damages.  (O'Donoghue Decl., ¶ 5.)

e.    Under the Second Cause of Action, Plaintiff seeks unpaid overtime wages on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the Putative Class Period. (Compl., ¶¶ 26-32.)

f.    Plaintiff alleges that, in addition to failing to pay putative class members for time spent waiting for and undergoing health screenings, "Defendant failed to pay the proper overtime rate by failing to include shift premiums and differentials, bonuses, and other incentive payments in calculating Class Members' overtime and double time rates [and] also failed to pay Class Members' overtime wages for all overtime hours worked when they required them to work of-the-clock."  (*Id.*, ¶ 5(a), (b), (e).)  Plaintiff also contends "Defendants were required to compensate Plaintiff and class members for all overtime hours worked … Defendants have knowingly and willfully refused to perform their obligations and compensate Plaintiff and class members for all wages earned as alleged above." (*Id.*, ¶¶ 28, 30.)

g.    Northern District Courts have held that in wage and hour cases such as this, one hour of overtime per week is a reasonable assumption. *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *12 (N.D. Cal. Oct. 25, 2019) (holding

9

that one hour of overtime and one hour of minimum wage per class member, per week was a "conservative assumption.")

   h. Based on a review of Defendants' records, Defendants' non-exempt employees within the state of California were paid an average hourly rate of over $30.00 during the Putative Class Period. (O'Donoghue Decl., ¶ 4.)

   i. Therefore, conservatively assuming that each putative class member who worked for Defendant on a full-time basis worked at least one hour of alleged unpaid overtime per week, (ii) each putative class member who worked for Defendant on a part-time basis worked at least one-half hour of alleged unpaid overtime per week, and (iii) each putative class member who worked for Defendant on an on call or per-diem basis worked at least one-quarter hour of alleged unpaid overtime per week, the amount in controversy from this claim equals at least $1,190,025, which includes: (1) $550,800 in unpaid overtime for full-time employees ($30.00/hour x 1.5 overtime rate x 1 overtime hour per week x 12,240 workweeks); (ii) $457,538 in unpaid overtime for part-time employees ($30.00/hour x 1.5 overtime rate x ½-hour of overtime per week x 20,335 workweeks); and (iii) $181,688 in unpaid overtime for on call or per diem employees ($30.00/hour x 1.5 overtime rate x ¼-hour of overtime per week x 16,150 workweek). (O'Donoghue Decl., ¶¶ 4 and 5.)

<u>Alleged Failure to Provide Meal and Rest Periods</u>

   j. Under the Third Cause of Action for alleged failure to provide meal periods, Plaintiff seeks meal period premiums on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the Putative Class Period. (Compl., ¶¶ 33-41.)

   k. Plaintiff alleges that, "[d]uring the relevant time period, Plaintiff and class members did not receive compliant meal periods for each five hours worked per day as a result of, among other things, lack of proper coverage during these employees' shifts." (*Id.*, ¶ 38.) Plaintiff also alleges that "Defendants have also required class members to be 'on duty' during meal and rest periods such that they have not been provided with legally compliant meal and rest periods under California law." (*Id.*)   Additionally, Plaintiff contends that "Defendants also routinely failed to provide Plaintiff and class members with a second, off-the-clock meal break for shifts lasting longer than ten hours." (*Id.*; *see also Id.*, ¶ 5(c) ("Based on the lack of proper

10

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]  Case No. TBA

coverage within store locations, Defendants' requirements to be responsive to communication devices, and the necessity to be available to assist incoming customers, Plaintiff and Class Members were not able to take required off-duty meal periods during their shifts.") Moreover, Plaintiff claims that "Defendants failed to pay Plaintiff and class members all meal period premiums due for meal period violations …" (*Id.*, ¶ 40.)

l. Courts in the Ninth Circuit have regularly found that a violation rate of 20% is a reasonable assumption where there is an allegation of a "policy and practice" of failing to provide meal and rest periods and pay attendant premiums. *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 U.S. Dist. LEXIS 59399, at *6 (N.D. Cal. Apr. 5, 2019) ("Courts in this Circuit, including in this District, have frequently upheld at least a 20% violation rate for purposes of CAFA amount in controversy calculations where the plaintiff does not specify the frequency of the alleged missed meal or rest periods.); *see, e.g.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *16 (N.D. Cal. Dec. 30, 2019) ("Defendant's first assumption—a 20% violation rate for meal and rest breaks during the putative class period—is reasonable given the allegations of a "pattern and practice" of such violations."); *Mortley v. Express Pipe & Supply Co.*, No. SACV 17-1938-JLS-JDE, 2018 U.S. Dist. LEXIS 18761, at *9 (C.D. Cal. Feb. 5, 2018) (finding defendants assumption that class members missed two meal periods and two rest periods each per week based on allegations of "a company-wide policy and/or practice of understaffing" was reasonable); *Stanley v. Distribution Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 U.S. Dist. LEXIS 202035, at *6 (C.D. Cal. Dec. 7, 2017) (accepting assumed violation rates of "three missed rest breaks, and three missed meal breaks per week" where the complaint offered no guidance as to the frequency of the alleged violations); *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2017 U.S. Dist. LEXIS 197358, at *9 (C.D. Cal. Nov. 30, 2017) (finding that, where a plaintiff alleged a "uniform practice" of meal and rest period violations, a 60% rate was reasonable); *Francisco v. Emeritus Corp.*, 2017 U.S. Dist. LEXIS 90131, at *13 (C.D. Cal. June 12, 2017) (finding defendants' estimation of one violation per work week for both meal and rest breaks reasonable and conservative because plaintiff alleged violations occurred as "a pattern and practice"); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB

11

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                    Case No. TBA

(KKx), 2016 U.S. Dist. LEXIS 60078, at *13 (C.D. Cal. May 5, 2016) (court found defendant's assumption that each putative class member missed one meal break and one rest period per workweek based on policy and practice allegations reasonable).

  m. Therefore, conservatively assuming that (i) each putative class member who worked for Defendant on a full-time basis was not provided with one meal period per week and was not paid a meal period premium, (ii) each putative class member who worked for Defendant on a part-time basis was not provided with one meal period per every two weeks and was not paid a meal period premium, and (iii) each putative class member who worked for Defendant on an on call or per-diem basis was not provided with one meal period per every four weeks and was not paid a meal period premium, the amount in controversy from this claim equals at least $793,350, which includes: (1) $367,200 in unpaid meal period penalties for full-time employees ($30.00/hour x 1 meal period violation per week x 12,240 workweeks); (ii) $305,025 in unpaid meal period penalties for part-time employees ($30.00/hour x ½ meal period violations per week x 20,335 workweeks); and (iii) $121,125 in unpaid meal period penalties for on call or per diem employees ($30.00/hour x ¼ meal period violations per week x 16,150 workweek).  (O'Donoghue Decl., ¶¶ 4 and 5.)

  n. Under the Fourth Cause of Action for alleged failure to provide rest periods, Plaintiff seeks rest period premiums on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the Putative Class Period. (See Compl., ¶¶ 42-48.)

  o. Plaintiff alleges that, "[d]uring the relevant time period, Plaintiff and class members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked. (*Id.*, ¶ 45; *see also Id.*, ¶ 5(c).)  Plaintiff further alleges that "Defendants failed to pay Plaintiff and class members all rest period premiums due for rest period violations…") (*Id.*, ¶ 47.)

  p. Therefore, conservatively assuming that (i) each putative class member who worked for Defendant on a full-time basis was not provided with one rest period per week and was not paid a rest period premium, (ii) each putative class member who worked for Defendant on a part-time basis was not provided with one rest period per every two weeks and was not paid a rest period premium, and (iii) each putative class member who worked for Defendant on an on call or

12

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction] Case No. TBA

per-diem basis was not provided with one rest period per every four weeks and was not paid a rest period premium, the amount in controversy from this claim equals at least $793,350, which includes: (1) $367,200 in unpaid rest period penalties for full-time employees ($30.00/hour x 1 rest period violation per week x 12,240 workweeks); (ii) $305,025 in unpaid rest period penalties for part-time employees ($30.00/hour x ½ rest period violations per week x 20,335 workweeks); and (iii) $121,125 in unpaid rest period penalties for on call or per diem employees ($30.00/hour x ¼ rest period violations per week x 16,150 workweek). (O'Donoghue Decl., ¶¶ 4 and 5.)

Alleged Failure to Provide Accurate Itemized Wage Statements

q. Under the Fifth Cause of Action for failure to provide accurate itemized wage statements, Plaintiff seeks penalties on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the relevant time period. (Compl., ¶¶ 49-55.)

r. Plaintiff alleges that "[d]uring the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and class members." (*Id.*, ¶ 51.) Plaintiff further alleges that "Plaintiff and class members have suffered injury and damage to their statutorily protected rights … California Labor Code § 226(a) requires an employer to pay the greater of all actual damages or fifty dollars ($50.00) for the initial pay period in which a violation occurred, and one hundred dollars ($100.00) per employee for each violation in subsequent pay period…" (*Id.*, ¶ 53.)

s. Labor Code section 226 has a one-year statute of limitations. California Code of Civil Procedure § 340(a).

t. Based on a review of Defendant's records, Defendant employed at least 307 non-exempt employees in California during the time period of April 15, 2021 to May 23, 2022. (O'Donoghue Decl., ¶ 6.) Between the 307 non-exempt employees, they worked approximately 6,791 pay periods between April 15, 2021 to May 23, 2022. (*Id.*) None of these putative class members have worked enough pay periods (41 pay periods) to entitle them to more than $4,000 worth of violations per Labor Code § 226(a).

u. Therefore, assuming that each of the 307 non-exempt employees in California who were employed since April 15, 2021 are entitled to $50.00 in penalties for the first Labor Code

13

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]                                        Case No. TBA

§ 226(a) violation, and $100.00 for subsequent violations, without exceeding $4,000 in penalties for any one non-exempt employee, this Cause of Action will make up at least <u>$663,750</u> (($50.00 x 307 initial violations) + ($100.00 x 6,484 subsequent violations)). (O'Donoghue Decl., ¶ 6.)

v. Courts in the Ninth Circuit have held that it is appropriate to assume a 100% violation rate for wage statement violations, whereas here, a plaintiff asserts numerous violations that could potentially trigger penalties under Labor Code § 225. *See Moppin v. Los Robles Reg'l Med. Ctr.,* No. EDCV 15-1551 JGB (DTBx), 2015 U.S. Dist. LEXIS 129574, at *10 (C.D. Cal. Sep. 24, 2015) (district court finding that a 100% violation rate was justified because the plaintiff there asserted in her complaint that "at all relevant times herein, defendants intentionally and willfully failed to furnish plaintiff and the class members with accurate wage statements," thereby accusing defendants of "issuing inaccurate wage statements 'at all times' and in regards to both Plaintiff and the class members."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *25 (C.D. Cal. May 9, 2018) (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.")

<u>Failure to Reimburse Business Expenses</u>

w. Under the Sixth Cause of Action for failure to reimburse business expenses, Plaintiff seeks to recover incurred necessary expenditures on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the Putative Class Period. (Compl., ¶¶ 56-65.)

x. Plaintiff alleges that "[d]uring the relevant time period, Defendant was required to indemnify and reimburse Plaintiff and members of the Plaintiff Class for all expenditures or losses causes by the employer's want of ordinary care and/or incurred in direct consequent of the discharge of their duties, but failed to indemnify and reimburse Plaintiff and members of the Plaintiff class." (*Id.*, ¶ 62.) Plaintiff further alleges that "[a]s a direct and proximate result, Plaintiff and members of the Plaintiff Class suffered, and continue to suffer, substantial losses, related to the use and enjoyment of such monies to be reimbursed, lost interest on such monies, and expenses … for example, Defendant has failed to reimburse Plaintiff and

14

class members for all reasonable, business-related automobile expenses, as well as the use of their personal cell phones for work-related duties." (*Id.*, ¶ 63.)

      y.      Therefore, conservatively assuming that (i) each putative class member who worked for Defendant on a full-time basis incurred just $10.00 per workweek in unreimbursed business expenses, (ii) each putative class member who worked for Defendant on a part-time basis incurred just $10.00 every two workweeks in unreimbursed business expenses, and (iii) each putative class member who worked for Defendant on an on call or per-diem basis incurred just $10.00 every four workweeks in unreimbursed business expenses, the amount in controversy from this claim equals at least $264,450, which includes: (1) $122,400 in unreimbursed business expenses for full-time employees ($10.00 per week x 12,240 workweeks); (ii) $101,675 in unreimbursed business expenses for part-time employees ($5.00 per week x 20,335 workweeks); and (iii) $40,375 in unreimbursed business expenses for on call or per diem employees ($2.50 per week x 16,150 workweek).  (O'Donoghue Decl., ¶ 5.)

Waiting Time Penalties

      z.      Under the Seventh Cause of Action for failure to timely pay final wages, Plaintiff seeks waiting time penalties on behalf of himself and Defendant's non-exempt employees within the state of California at any time during the relevant time period.  (Compl., ¶¶ 66-71.)

      aa.      Plaintiff alleges that "Defendants willfully failed to pay Plaintiff and the class members all their earned wages upon termination … either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ." (*Id.*, ¶ 68.)  Plaintiff further alleges that "Plaintiff and class members are entitled to recover from Defendants the statutory penalty which is defined as Plaintiff's and class members' regular daily wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum…" (*Id.*, ¶ 71.)

      bb.      Labor Code section 203 has a three-year statute of limitations.  *See Pineda v. Bank of Am.*, 50 Cal.4th 1389, 1398 (2010); *Gomez v. Michaels Stores, Inc.*, No. EDCV 15-2328-JGB-DTBx, 2016 U.S. Dist. LEXIS 22678, at * 10, fn. 1 (C.D. Cal. Feb. 22, 2016).

      cc.      Where a "Plaintiff alleges that Defendant failed to pay overtime and minimum wages and meal and rest break premiums to the present, using a 30-day maximum

15

Defendant's Notice of Removal of Action to Federal Court
Under 28 U.S.C. §§ 1332(d) and 1441 [CAFA Jurisdiction]      Case No. TBA

[penalty] is inherently reasonable." *Kastler*, 2019 U.S. Dist. LEXIS 185484, at *16; *see also Chavez*, 2019 U.S. Dist. LEXIS 59399, at *9-10 ("by tying the unpaid final wage claim to his other claims, [the plaintiff] makes the assumption of 100% violation for unpaid wages reasonable…").

dd. Based on a review of Defendant's records, at least 74 non-exempt employees who worked for Defendant in California separated from their employment with Defendant during the time period of April 15, 2019 to May 23, 2022. (O'Donoghue Decl., ¶ 7.)

ee. Therefore, the amount in controversy from this claim equals at least $532,800 ([$30.00/hour x 8 hours per day x 30 days] x 74 putative class members). (O'Donoghue Decl., ¶¶ 4 and 7.) *See* Cal. Lab. Code § 203 (imposing a statutory penalty equal to employee's daily rate of pay for each day the wages are improperly withheld, up to 30 days).

<u>Alleged Attorneys' Fees</u>

ff. Finally, Plaintiff seeks to recover attorneys' fees on behalf of the putative class. (Compl., Prayer of Relief, ¶ 6.) Defendant denies that Plaintiff is entitled to recovery any attorneys' fees; however, attorneys' fees may properly be included in determining the amount in controversy. *See, e.g.*, *Lowdermilk v. US Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (holding that statutorily mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

gg. For class actions, 25% of the common fund is a benchmark rate for attorney's fees in this Circuit. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *see also Giannini v. Northwestern Mut. Life Ins. Co.*, No. No. C 12-77 CW, 2012 U.S. Dist. LEXIS 60143, at *13-14 (N.D. Cal. Apr. 30, 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendants "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Johnson v. Gen. Mills, Inc.*, SACV 10-00061-CJC(ANx), 2013 U.S. Dist. LEXIS 90338, at *20 (C.D. Cal. June 17, 2013) ("The typical range of acceptable attorneys ' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25%

considered the benchmark."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that 25% is benchmark and "usual" range of awards is 20-30%).

        hh.    Twenty-five percent (25%) of the total potential amount in controversy for the limited claims outlined above is $1,198,268.

        ii.    The sums above amount to **$5,991,338**, as follows:

| CLAIMS | AMOUNT IN CONTROVERSY |
| --- | --- |
| First Cause of Action (Unpaid Minimum Wages) | $555,345 |
| Second Cause of Action (Unpaid Overtime Wages) | $1,190,025 |
| Third Cause of Action (Meal Break Violations) | $793,350 |
| Fourth Cause of Action (Rest Break Violations) | $793,350 |
| Fifth Cause of Action (Inaccurate Wage Statements) | $663,750 |
| Sixth Cause of Action (Unreimbursed Business Expenses) | $264,450 |
| Seventh Cause of Action (Waiting Time Penalties) | $532,800 |
| **SUBTOTAL** | $4,793,070 |
| Attorneys' Fees at 25% | $1,198,268 |
| **TOTAL** | **$5,991,338** |

24.    Based on the foregoing, all requirements for removal under CAFA are satisfied here.

**Defendant is Not a Governmental Official or Entity**

25.    Defendant is a corporation and not a state, a state official, or any other governmental entity. (O'Donoghue Decl., ¶ 3.)

**VENUE**

26.    For purposes of removal only, venue properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1441(a). Section 1441(a) provides, in relevant part:

[A]ny civil action brought in a State court of which the district courts of the United States

have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

27. As indicated above, Plaintiff brought this action in Santa Clara Superior Court. The United States District Court for the Northern District of California encompasses this territory. 28 U.S.C. § 84(d).

## TIMELINESS OF REMOVAL

28. Plaintiff served Defendant with the Complaint on May 6, 2022. (Gitig Decl., ¶ 2.) Therefore, this Notice of Removal is timely because this Notice of Removal is filed within thirty days after Defendants were served with papers from which it could first be ascertained that the case was removable. 28 U.S.C. § 1446(b).

## NOTICE TO PLAINTIFFS AND STATE COURT

29. In accordance with 28 U.S.C. § 1446(d), Defendant's counsel certifies that a copy of this Notice of Removal and all supporting papers will be served on Plaintiff's counsel and filed with the Clerk of the Santa Clara Superior Court. As such, all procedural requirements under Section 1446 are satisfied.

## CONCLUSION

30. For the reasons set forth above, Defendant maintains that this action is properly removed to this Court.

Dated: June 3, 2022                                   JACKSON LEWIS P.C.

By: */s/ Eric J. Gitig*
    Eric J. Gitig
    Kevin Ha

    Attorneys for Defendant
    PHARMACA INTEGRATIVE
    PHARMACY, INC.

4890-4882-5123, v. 1